**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

_____

**AMY COLBERT**	)
23513 Buckridge Drive	)
Damascus, Maryland 20872	)
	)
	)
    **Plaintiff,**	)
	)   **Civil Action No.**
    v.	)
	)   <u>**JURY TRIAL DEMAND**</u>
**HONEYWELL**	)
**INTERNATIONAL, INC.**	)
101 Columbia Road	)
P.O. Box 4000	)
Morristown, New Jersey 07962	)
	)
	)
    Serve: CSC-Lawyers Incorporating	)
           Service Company	)
           7 St. Paul Street, Suite 820	)
           11Baltimore, Maryland 21202	)
	)
	)
    **Defendant.**	)
_____

## <u>COMPLAINT</u>

Plaintiff Amy Colbert ("Ms. Colbert") brings this suit against Defendant Honeywell International, Inc. ("Honeywell") under the federal Equal Pay Act and the Maryland Equal Pay Act.

### <u>PARTIES</u>

1. Ms. Colbert is a resident of the state of Maryland, residing in Montgomery County.

2. Honeywell is a diversified multinational corporation which produces a variety of products which had revenue of $39 billion in 2013.

3. In 1999 Honeywell purchased Pittway Corporation, which was a diversified holding company, best known as a manufacturer and distributor of burglar and fire alarms.

4. Among Pittway's subsidiaries was ADI, for which Ms. Colbert worked.

5. When Honeywell purchased ADI through its acquisition of Pittway, it integrated ADI into Honeywell as a division.

6. ADI is a leading global wholesale distributor of security and low voltage products, which currently has more than 200 worldwide locations, including branches in Maryland in Gaithersburg, Beltsville, and Owings Mills.

7. Low voltage products sold by ADI include security systems, surveillance video cameras, fire alarm systems, access control systems and data products.

## JURISDICTION & VENUE

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

10. Venue in this District is proper under 28 U.S.C. § 1391(b) because this is the judicial district in which the events and omissions giving rise to this claim occurred.

## FACTS

11. Ms. Colbert first began working for ADI's predecessor, Ademco, in April of 1981 as a secretary/receptionist in Greensboro, North Carolina and was continuously employed by Ademco or its successors, including Defendant Honeywell, until September 2014.

12. After being hired as a secretary/receptionist, Ms. Colbert was transitioned to telemarketing.

13. In 1985, due to Ms. Colbert's success in telemarketing, Ms. Colbert was moved into ADI's sales department and was relocated to ADI's Alexandria, Virginia branch.

14. After moving to Alexandria, Ms. Colbert was promoted to branch manager after just three months.

15. In 1990, due to her excellent performance as a branch manager in Alexandria, Ms. Colbert was assigned to open ADI's Gaithersburg, Maryland office.

16. Ms. Colbert remained the branch manager in Gaithersburg until 1995, when she was promoted to Regional Sales Manager.

17. As a Regional Sales Manager, at the time of her termination from Honeywell, Ms. Colbert supervised nine branches and 52 employees.

18. Ms. Colbert's responsibilities as a Regional Sales Manager included developing new business relationships, maintaining existing accounts, meeting profit and sales goals, and coaching and training the staff she supervised.

19. Ms. Colbert received the Regional Sales Manager award in 1995, 1997, and 2000.

20. In 2000, Ms. Colbert also received the Sales Manager of the Year award.

21. Ms. Colbert was continually praised for implementing innovative sales processes that were then adopted by ADI and used throughout the sales department.

22. There were twelve ADI Regional Sales Managers at the time of Ms. Colbert's termination from Honeywell in September, 2014; and, from 2000 to 2014, Ms. Colbert was among the top five highest performing Regional Sales Managers for thirteen out of fourteen years.

23. The twelve Regional Sales Managers at the time of Ms. Colbert's termination from Honeywell were:

    a. Ms. Colbert;

    b. Alan Higgins ("Higgins");

    c. Johnny Hudson ("Hudson");

    d. Bill Oppenheim ("Oppenheim);

    e. Mike Maher ("Maher");

    f. Doug Schumacher ("Shumacher");

    g. Dan Traugott ("Traugott");

    h. Tim Bond ("Bond");

    i. Gary Bullock ("Bullock")';

    j. Burt Aylesworth ("Aylesworth"); and

    k. Chuck Slaybough ("Slaybough")

24. Of the twelve Regional Sales Managers at the time of her termination from Honeywell, Ms. Colbert, who had been at ADI for thirty-three years, had the most seniority with the company.

25. In terms of seniority in the position of Regional Sales Manager, Ms. Colbert, with twenty years in the position of Regional Sales Manager, had either more seniority or approximately the same seniority as all other Regional Sales Managers.

26. Ms. Colbert was paid through a combination of base salary and sales commissions.

27. Approximately 55% of Ms. Colbert's compensation was through monthly commissions and the remainder was base salary.

28. Due to the stable client base, Ms. Colbert's commissions did not have significant fluctuation. Therefore, her compensation from year to year was approximately the same at approximately $150,000 beginning in 2007.

29. Each Regional Sales Manager had their own separate sales commission plan.

30. The sales commission plans were provided at the time of hire or promotion.

31. The sales commission plans were provided by management and were not subject to negotiation.

32. According to Ms. Colbert's commission plan, as it applied from 2007 through 2014, if she met her goals she would be paid approximately $150,000.00.

33. This $150,000 was significantly less than that of her male comparators.

34. Ms. Colbert's male comparators who supervised between eight and ten branches and had between fifteen and twenty-one years of experience as Regional Sales Managers were: Higgins; Hudson; Oppenheim; and Maher.

35. Ms. Colbert, who was making approximately $150,000.00 at the time of her termination from Honeywell, was making significantly less than all of her male comparators.

36. Higgins was making approximately $180,000 or more in total compensation.

37. Hudson was making approximately $180,000 or more in total compensation.

38. Oppenheim was making approximately $200,000 or more in total compensation.

39. Maher was making approximately between $180,000 and $200,000 in total compensation.

40. Even Schumacher and Aylesworth, who each had only approximately ten years of experience as Regional Sales Managers, were making more than Ms. Colbert.

They were each making approximately between $160,000 and $180,000 per year in total compensation.

41. All of the other Regional Sales Managers had 5 or fewer years as Regional Sales Managers.

42. In addition to the twelve Regional Sales Managers at the time of Ms. Colbert's termination from Honeywell, described above, Andy Applegate ("Applegate") was a prior Regional Sales Manager who worked for ADI from 2000 to 2012. At the time of his separation from ADI/Honeywell in 2012, Applegate was making approximately $200,000 or more.

43. Honeywell, with knowledge, intentionally, and willfully paid Ms. Colbert less than her male comparators by between $30,000 and $50,000 per year or more in total compensation.

44. Ms. Colbert was not simply underpaid versus her male counterparts in terms of total compensation, but she was underpaid in her base salary as well.

45. Ms. Colbert's base salary at the time of her termination from Honeywell was $65,000.

46. Upon information and belief Ms. Colbert's male comparators had the following base salaries at the time of her termination from Honeywell:
    a. Higgins had a base salary of approximately $100,000;
    b. Hudson had a base salary of approximately $100,000;
    c. Oppenheim had a base salary of approximately $100,000;
    d. Maher had a base salary of approximately $100,000;

47. Even Schumacher, with half of the experience of Ms. Colbert, was paid a base salary of approximately between $80,000 and $100,000.

48. Accordingly, upon information and belief, Ms. Colbert was paid approximately $35,000 less per year in salary than her male counterparts.

## COUNT I
### Federal Equal Pay Act

49. Ms. Colbert realleges paragraphs 1 through 48 of this Complaint as though fully set forth here.

50. At all relevant times, Honeywell has been aware that the Equal Pay Act applied to it or showed reckless disregard for whether the Equal Pay Act applied to it.

51. Regarding Ms. Colbert, Honeywell violated the Equal Pay Act and did so willfully.

WHEREFORE, Ms. Colbert requests that this Court:

A. Enter judgment in her favor and against Honeywell for the amount shown to be due to her for Honeywell's failure to pay her an amount equal to that of her male co-workers for the three years immediately prior to the filing of this lawsuit.

B. Enter judgment in her favor and against Honeywell for liquidated damages in an amount equal to the amount shown to be due to her for Honeywell's failure to pay her an amount equal to that of her male co-workers for the three years prior to the filing of this lawsuit.

C. Award her reasonable attorneys' fees, costs, and expenses of this action; and

D. Grant such other relief as this Court deems just and proper.

## COUNT II
**Maryland Equal Pay Act**

52. Ms. Colbert realleges paragraphs 1 through 51 of this Complaint as though fully set forth here.

53. At all relevant times, Honeywell has been aware that the Maryland Equal Pay Act applied to it or showed reckless disregard for whether the Maryland Equal Pay Act applied to it.

54. Regarding Ms. Colbert, Honeywell violated the Maryland Equal Pay Act and did so willfully.

WHEREFORE, Ms. Colbert requests that this Court:

A. Enter judgment in her favor and against Honeywell for the amount shown to be due to her for Honeywell's failure to pay her an amount equal to that of her male co-workers for the three years immediately prior to the filing of this lawsuit.

B. Enter judgment in her favor and against Honeywell for liquidated damages in an amount equal to the amount shown to be due to her for Honeywell's failure to pay her an amount equal to that of her male co-workers for the three years prior to the filing of this lawsuit.

C. Award her reasonable attorneys' fees, costs, and expenses of this action; and

D. Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Ms. Colbert demands a jury trial of all issues so triable in this case.

Respectfully submitted,

_____/s/_____
Linda Hitt Thatcher, Bar # 05039
Robert J. Baror, Bar # 17763


THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, Maryland  20770

P: (301) 441-1400
F: (301) 441-9602

www.thatcherlaw.com

*Counsel for the Plaintiff,*
*Amy Colbert*